IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DEBBIE K. HOLLINGSWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:09-0031 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Bryant |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Debbie Hollingsworth's ("Plaintiff") Motion for Judgment on the Record ("Plaintiff's Motion") (Doc. No. 9) and Plaintiff's Memorandum in Support (Doc. No. 10). Additionally before the Court is Defendant Commissioner of Social Security's ("Defendant") responsive Motion for Judgment on the Pleadings ("Defendant's Motion") (Doc. No. 13), Defendant's Memorandum in Support (Doc. No. 14), and Plaintiff's Response (Doc. No. 15). Magistrate Judge Bryant has issued a Report and Recommendation ("Report") (Doc. No. 16), recommending that the Court deny Plaintiff's Motion, grant Defendant's Motion, and affirm the decision of the Social Security Administration. Plaintiff has filed timely objections (Doc. No. 19) and Defendant has filed a Reply (Doc. No. 20).

Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety, **GRANTS** Defendant's Motion, and **DENIES** Plaintiff's Motion.

1

**I.     BACKGROUND**

   *A.     Procedural Background*

Plaintiff filed the current applications for Social Security benefits in July and August 2005. (Tr. 78-82.) Plaintiff alleged disability beginning on June 15, 2005 due to diabetes, high blood pressure, incontinence, right foot problems, black out spells, and depression. (Tr. 84, 124, 131.) The Social Security Administration ("SSA") initially denied Plaintiff's claims on December 21, 2005. (Tr. 62.) Plaintiff filed for reconsideration (Tr. 60) and was again denied benefits (Tr. 51-59). An Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claims on June 12, 2008 and heard testimony from Plaintiff and an impartial vocational expert. (Tr. 329-51). The ALJ issued a decision on June 25, 2008 denying Plaintiff's claims and finding her not disabled. (Tr. 14-23.) The Appeals Council denied Plaintiff's request for review on April 2, 2009 (Tr. 4-6), making the ALJ's decision the final decision of the SSA.

Subsequently, Plaintiff filed this civil action on June 8, 2009. (Doc. No. 1.) This Court has jurisdiction under 42 U.S.C. § 405(g) (2010). Plaintiff filed the current Motion for Judgment on the Record on August 20, 2009 (Doc. No. 9) and Defendant answered with a Motion for Judgment on the Pleadings on September 21, 2009 (Doc. No. 13). On April 21, 2010, Magistrate Judge Bryant issued a Report recommending that Plaintiff's Motion be denied, Defendant's Motion be granted, and the decision of the SSA be affirmed. (Doc. No. 16.) Plaintiff filed Objections, asserting that (1) the ALJ failed to incorporate Plaintiff's mental limitations in her assessment of Plaintiff's residual functional capacity ("RFC") and (2) the ALJ failed to identify and consider all of Plaintiff's physical limitations. (Doc. No. 18.)

2

*B.     Factual Background*

The Court adopts the portion of the Magistrate's Report addressing the relevant facts of the record. (Doc. No. 16, at 4-7).

**II.    STANDARD OF REVIEW**

The Court reviews the portions of the Report to which Petitioner objects de novo pursuant to 28 U.S.C. § 636(b). The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, the Court's review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to finding legal errors. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Hum. Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

The Court must uphold the Commissioner's decision if substantial evidence supports it, even if the evidence could also support the opposite conclusion. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999). Factual determinations should be left to the ALJ and the Commissioner; thus, the Court must affirm the Commissioner's findings if they are supported by substantial evidence, even if the Court would have come to a different conclusion. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

### III. PLAINTIFF'S OBJECTIONS TO THE ALJ'S FINDINGS

    *A.    Plaintiff objects to the ALJ's failure to sufficiently consider Plaintiff's mental limitations.*

    In her decision, the ALJ concluded that Plaintiff's depressive disorder was non-severe and resulted in no more than mild limitations on Plaintiff's ability to work. (Tr. 17-22.) Plaintiff objects that these findings are not supported by substantial evidence. (Doc. No. 18, at 2.) Plaintiff contends that treatment records from Centerstone Community Mental Health Center establish the existence of mental limitations that the ALJ should have considered. (Id.) Thus, Plaintiff argues that the ALJ erred by making no allowance for any mental limitations in her RFC determination. (Id.) Plaintiff insists that the ALJ was required to consider her depression because it was diagnosed by her treating psychiatrist, treated with prescription antidepressant medication, and documented in the Centerstone treatment records. (Id. at 2-4.) Plaintiff argues that even if Centerstone or the professionals who work there are not treating sources, entitling them to great deference under the regulations, SSA policy supports some amount of deference to their treatment notes. (Id. at 3.)

    Plaintiff is correct that an ALJ is required to consider all medical opinions together with the rest of the record. 20 C.F.R. § 404.1527(b) (2010); S.S.R. 06-03 (Aug. 9, 2006). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources." 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1)-(5) (2010). In addition, an ALJ may use evidence from other sources to evaluate a claimant's impairments and how they affect the ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include medical sources not mentioned in § 404.1513(a), such as nurse-practitioners, physicians' assistants, and therapists. 20 C.F.R. § 404.1513(d)(1). However, an "acceptable medical source" is required to establish a

4

medically determinable impairment, and only acceptable medical sources can be treating physicians under § 404.1527. 65 Fed. Reg. 11866-02 (Mar. 7, 2000). The opinion of a treating physician is entitled to great deference, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

The Centerstone records on which Plaintiff relies are from various professionals within the facility. Not all of the professionals are licensed psychiatrists or psychologists and therefore do not qualify as acceptable medical sources. 20 C.F.R. § 404.1513(a). A significant portion of the records are notes from Plaintiff's group therapy sessions. These "group notes" are signed by Linda Mogge, a licensed psychological examiner and therapist who is not qualified to offer diagnostic opinions or overall appraisals of mental health unless under a licensed psychologist's supervision. Tenn. Code Ann. § 63-11-202(a) (2010). Plaintiff's case manager, Betty Barnett, completed many of the progress notes. Other records, including the Tennessee Clinically Related Group ("CRG") forms on which Plaintiff heavily relies, were completed by anonymous professionals whose qualifications are not known. Thus, the ALJ was not required to give the collective records the increased deference due to the opinions of treating sources. 20 C.F.R. § 404.1527(d).

A licensed psychiatrist, Dr. Gunasekera, saw Plaintiff at least three times at Centerstone over a six month period. (Tr. 227, 240, 303.) It may be that Dr. Gunasekera would meet the requirements to be considered Plaintiff's treating psychiatrist. Even if this were the case, however, Dr. Gunasekera's notes do not weigh in Plaintiff's favor. Dr. Gunasekera found that Plaintiff's mood was euthymic and that her affect was appropriate in two out of the three meetings. (Tr. 240, 303.) In December 2007, Plaintiff reported to Dr. Gunasekera that

5

medication was helping her depression, she did not have crying spells, and she was sleeping well. (Tr. 240.) In May 2008, a month before the ALJ's decision, Plaintiff reported that she was doing well, was not depressed or anxious, and was sleeping well. (Tr. 303.) Only one of Dr. Gunasekera's reports indicates that Plaintiff's mood was depressed. (Tr. 227.) In the same report, Dr. Gunasekera also noted that Plaintiff was "doing well." (Id.) All of Dr. Gunasekera's reports state that Plaintiff had no problems with activities of daily living, judgment, or cognitive processes. Dr. Gunasekera never reported on Plaintiff's ability to work or any limitations.

Despite Plaintiff's assertion that the ALJ wholly ignored the opinion of the Centerstone professionals in violation of the regulations, the ALJ's decision shows that she sufficiently considered the Centerstone records as "other source" evidence. The ALJ discussed the contents of the records throughout her decision. (Tr. 20-22.) She recognized Plaintiff's depressive disorder as a medically determinable impairment and engaged in a substantial discussion of her reasons for finding that the depression resulted in only mild limitations. (Tr. 20-23.) Thus, the ALJ did not commit legal error by failing to consider Plaintiff's mental impairment or treatment records.

The ALJ's conclusions regarding Plaintiff's mental impairment are supported by substantial evidence in the record. In 2005, a consulting psychological examiner diagnosed Plaintiff with "typical symptoms of bereavement" after the death of her husband. (Tr. 159.) A Psychiatric Review Technique form completed by a DDS in 2005 reports that Plaintiff suffered from the medically determinable affective disorder of bereavement with anxiety symptoms, but that it was not severe. (Tr. 161.) The DDS found that the impairment created no more than mild limitations in any area of functioning. (Tr. 171.) The record indicates that Plaintiff's condition worsened after the death of her brother in 2007, at which point Plaintiff sought treatment at

Centerstone. Plaintiff was diagnosed with major depressive disorder in October 2007 and began taking antidepressant medication. (Tr. 262.) Plaintiff asserts that her treating psychiatrist diagnosed the disorder; however, it appears that it was diagnosed by Karen Jenks, MSN, who prescribed the medication under Dr. Gunasekera's name. (Tr. 262-63.) In fact, a report from Dr. Gunasekera in December 2007 states that it was the first time he was seeing Plaintiff. (Tr. 240.)

Although Plaintiff's intake CRG form reports that Plaintiff had marked limitations in several areas of functioning, there is little evidence in support of such severe limitations. Further, this assessment occurred prior to Plaintiff's medication and therapy regimen. The Centerstone records, including a later CRG form, demonstrate that Plaintiff's condition improved with the treatment. Most of the negative reports in the record consist of Plaintiff's subjective complaints about the severity of her depressive symptoms. An ALJ may not ignore a claimant's subjective complaints, but the ALJ is not required to credit the complaints if they are inconsistent with substantial evidence in the record. Jones v. Comm'r of Soc. Sec., 336 F.ed 469, 475-76 (6th Cir. 2003). Plaintiff reported to Dr. Gunasekera on multiple occasions, once in the month before the ALJ's decision, that she was not experiencing depression or anxiety, that she was not having hallucinations or crying spells, and that she was sleeping well. Additionally, many reports indicate that Plaintiff's daily activities, intelligence, and interpersonal functioning were normal. Thus, the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence.

Plaintiff also relies on her Global Assessment Functioning ("GAF") scores of 42 and 44, indicating a serious impairment in social or occupational functioning. The ALJ properly concluded that she was not required to give weight to the GAF scores. Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx. 496, 511 (6th Cir. 2006). Nevertheless, the ALJ went on to evaluate

the GAF scores and found them to be inconsistent with the record as a whole. (Tr. 22.) Substantial evidence of Plaintiff's improvement and ability to function, supra, support this conclusion. Plaintiff also insists that the ALJ should have ordered an additional consultative psychological exam to assess Plaintiff's mental health before making a decision. This argument is unpersuasive, as the records from Centerstone were up to date through the time of the ALJ's decision and include an examination by a psychiatrist only a month earlier.

The ALJ thoroughly considered Plaintiff's mental impairments and the relevant treatment records. The evidence discussed provides substantial evidence for the ALJ's conclusions that Plaintiff's depression created no more than mild limitation on her ability to work. "If it is supported by substantial evidence, we must affirm the Commissioner's decision even if we would have decided the matter differently, and even if substantial evidence also supports the claimant's position." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Accordingly, the ALJ's conclusions are affirmed.

> B.  *Plaintiff objects to the ALJ's failure to consider all of Plaintiff's physical limitations.*

Plaintiff asserts that the ALJ failed to follow rules and regulations when assessing Plaintiff's physical limitations. (Doc. No. 18, at 6-8.) Specifically, Plaintiff contends that the ALJ failed to account for the symptoms of diabetes that plagued Plaintiff, such as fatigue and weakness, dizziness, decreased vision, incontinence, and foot problems. (Id. at 6.) Further, Plaintiff argues that her limitations from diabetes were exacerbated by other impairments. (Id. at 7.) For example, Plaintiff insists that the ALJ was required to consider the effects of her obesity on her functional capacity. (Id.) Additionally, Plaintiff asserts that the ALJ violated SSA regulations by failing to accommodate Plaintiff's other medically-established impairments. (Id.

at 7-8.)  When an ALJ finds that a claimant has at least one severe impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe."  S.S.R. 96-8p (July 2, 1996).  Plaintiff again refers to hypertension, foot and ankle problems, impaired vision, respiratory problems, and incontinence.  Plaintiff concludes that between these limitations and the consulting physician's report, the ALJ erred in concluding that Plaintiff had the capacity to perform medium level work.

        1.    <u>Plaintiff's Obesity</u>

Plaintiff claims that the ALJ violated S.S.R. 02-1p (Sep. 12, 2002) by failing to consider her obesity.  (Doc. No. 18, at 7.)  Plaintiff points to references in the record to her height and weight as evidence of a body mass index (BMI) that makes her obese.  (<u>Id.</u>)  In <u>Nejat v. Comm'r of Soc. Sec.</u>, the claimant alleged that an ALJ had violated S.S.R. 02-1p by failing to consider the claimant's obesity.  359 Fed. Appx. 574, 577 (6th Cir. 2009).  The Sixth Circuit upheld the ALJ's severity findings even though a physician had diagnosed the claimant with obesity.  <u>Id.</u>  The court reasoned that "[g]iven Nejat's failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition."  <u>Id.</u>  Similarly, this Court held that an ALJ's failure to discuss obesity was not erroneous when the medical record did not indicate that a plaintiff suffered from the medically determinable impairment of obesity, despite the plaintiff's body weight and BMI of about 38.7.  <u>Richard v. Astrue</u>, 2009 WL 5031317, at *10 (M.D. Tenn. 2009).   Plaintiff did not raise the issue of obesity in her application for disability benefits or in her testimony before the ALJ.  There is no documentation in the record that Plaintiff was diagnosed with clinical obesity or that it interfered with her functional abilities.  Under the law, the ALJ did not err in failing to consider Plaintiff's obesity.

9

### 2. Plaintiff's Miscellaneous Symptoms

The ALJ's decision, however, did identify and address all of the other conditions to which Plaintiff refers. (Tr. 19-23.) The ALJ found that while Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms," Plaintiff's allegations about the severity and limiting effects of the symptoms were not credible in light of the record. (Tr. 22.) According to the ALJ, "the findings do not substantiate a basis for an intensity, severity, and frequency of a level of pain that would significantly interfere with work related activities." (Tr. 21.) "Upon review, we are to accord the ALJ's determinations of credibility great weight and deference." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The ALJ did not, however, entirely disregard Plaintiff's symptoms; rather, she explicitly acknowledged that Plaintiff has some limitations which she provided for in the RFC assessment. (Id.)

The ALJ's assessment of Plaintiff's miscellaneous physical ailments is supported by substantial evidence. Various examining physicians and medical consultants found Plaintiff's physical symptoms to be non-severe, having little to no affect on her exertional abilities. Plaintiff saw Dr. Robert MacArthur, a podiatrist, in May 2005 regarding her foot problems. Dr. McArthur did not find any significant problems other than thickened toenails and calluses. (Tr. 144-45.) Dr. McArthur treated these problems and felt that they could be managed with repeated treatment and gel shoe inserts. (Tr. 145.) Records from the Hope Clinic of Middle Tennessee indicate routine management of Plaintiff's foot ailments. (Tr. 151-52.) In October 2005, Dr. Jarrel Rinehart found that Plaintiff's gait was normal, she had normal range of motion in all joints, and she was able to heel walk, toe walk, and heel-to-toe walk. (Id.) Dr. Rinehart concluded that Plaintiff could sit, stand, and walk for six to eight hours in an eight-hour workday

without limitation. (Tr. 148.) Additionally, Plaintiff testified that she walked up to two miles every day. (Tr. 344.)

Regarding Plaintiff's hypertension, Dr. Rinehart noted that it was controlled by medication and that she was "doing well from that standpoint." (Tr. 146.) Dr. Rinehart also found that Plaintiff had no blurred vision or double vision, and that she could see with 20/30 acuity in the right eye and 20/25 in the left eye. (Tr. 147.) Records from the Hope Clinic document that Plaintiff's incontinence was relieved by medication. (Tr. 149-55.) Medical Consultant Robert Doster completed a Residual Functional Capacity Assessment regarding Plaintiff's diabetes, stress incontinence, and hypertension. The report states that these conditions do not establish exertional or any other type of limitations. (Tr. 175-79.) Plaintiff's exam was "unremarkable"—she had a normal gait, no neuropathy, and 80 percent motor strength—and her hypertension and diabetes could be controlled with medication. (Tr. 182.) These findings are consistent with Plaintiff's other examinations. Additionally, Plaintiff reported to several examiners that she did housework, cooked, went grocery shopping, went to church, and visited friends, among other activities. There is no objective evidence in the record indicating the level of severity that Plaintiff claims, even when all of her symptoms are considered together. Accordingly, the Court finds that the substantial evidence in the record supports the ALJ's determination that Plaintiff's symptoms were not severe and that she can perform medium work.

## IV. CONCLUSION

The Court finds that the decision of the Commissioner was supported by substantial evidence and should be affirmed. For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, **GRANTS** Defendant's Motion, and **DENIES** Plaintiff's Motion.

It is so ORDERED.

Entered this the ___15th_____ day of July, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT